UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------x
UNITED STATES OF AMERICA,

                Plaintiff,

  -against-                        **MEMORANDUM AND ORDER**
                                          Case No. 16-CV-3485 (FB)

MARTIN SMELING NUNEZ,

                Defendant.
------------------------------------------------x

*Appearances:*
For the Plaintiff:                         *For the Defendant:*
RICHARD P. DONOGHUE           THOMAS D. BARRA
United States Attorney              401 Broadway, Suite 806
JOSEPH A. MARUTOLLO            New York, New York 10013
Assistant United States Attorney
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201

**BLOCK, Senior District Judge:**

       Martin Smeling Nunez was naturalized as a United States citizen on January 11, 2008. Pursuant to 8 U.S.C. § 1451(a), the United States has filed a complaint seeking to revoke Nunez's citizenship on the ground that it was procured illegally and by concealing a material fact. Nunez has denied the material allegations of the complaint.

       The United States now moves for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). For the following reasons, the motion is denied.

# I

8 U.S.C. § 1451(a) mandates revocation of naturalized citizenship upon a showing that the "order and certificate of naturalization were illegally procured or were procured by concealment of a material fact or by willful misrepresentation." Citizenship is "illegally procured" if it was obtained without "strict compliance with all the congressionally imposed prerequisites to the acquisition of citizenship." *Fedorenko v. United States*, 449 U.S. 490, 506 (1981). One such prerequisite is that an applicant for naturalization demonstrate good moral character during "the five years immediately preceding the date of filing his application" and "up to the time of admission to citizenship." 8 U.S.C. § 1427(a). By statute, an applicant cannot satisfy that requirement if he or she committed either a controlled substance offense or a "crime involving moral turpitude" during the relevant time period. *See* 8 U.S.C. § 1101(f)(3) (cross-referencing 8 U.S.C. § 1182(a)(2)(A)(i)).

For Nunez, the relevant time period runs from May 7, 2002 (five years before he filed his application for naturalization) and January 11, 2008 (the day he was sworn in as a citizen). The government alleges that Nunez conspired to distribute heroin and cocaine during that period. It argues that that crime violated the good moral character requirement and, therefore, that his naturalization was illegally procured. It further argues that his failure to disclose the crime separately requires denaturalization.

## II

Given the importance of the interest at stake, the government must prove grounds for revocation "by evidence that is clear, unequivocal, and convincing." *Kungys v. United States*, 485 U.S. 759, 772 (1988) (citing *Schneiderman v. United States*, 320 U.S. 118, 158 (1943)). A motion for judgment on the pleadings, meanwhile, "is designed to provide a means of disposing of cases when the material facts are not in dispute." *Rivera v. Schweiker*, 717 F.2d 719, 722 n.1 (2d Cir. 1983) (quoting 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1367). As with a motion to dismiss, all reasonable inferences must be drawn "in favor of the nonmoving party." *Kass v. City of New York*, 864 F.3d 200, 206 (2d Cir. 2017). Thus, the procedural posture of this case elevates an already heightened burden of proof.

Nunez admits that he pleaded guilty to conspiring to distribute heroin and crack cocaine. He denies, however, committing the crime during the relevant period, instead claiming that it occurred after he became a citizen. That alone should defeat the government's motion. 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1370 ("A party moving for a judgment on the pleadings impliedly admits the truth of its adversary's allegations and the falsity of its own assertions that have been denied by that adversary.").

3

The government argues that the date of Nunez's crime was established during the criminal proceedings, *United States v. Nunez*, 08-CR-709-DLC (S.D.N.Y.), and that Nunez is collaterally estopped from challenging that date. Specifically, it relies on (A) Nunez's guilty plea and (B) the presentence report ("PSR") prepared for his sentencing. The Court concludes that neither conclusively established the date of Nunez's crime.

**A. Guilty Plea**

The indictment against Nunez charged that he conspired with his co-defendant to distribute heroin and crack "[f]rom at least November 2007, up through and including at least June 2008." Decl. of Joseph A. Marutollo (Mar. 14, 2018), Ex. B (Superseding Indictment). It further charged that he furthered the conspiracy by participating in a heroin sale on January 10, 2008, one day before his naturalization. *See id.*

The indictment, however, contained only allegations of no evidentiary value. *See United States v. Esso*, 684 F.3d 347, 350 (2d Cir. 2012). Moreover, the date of commission is not an essential element of a crime, such that a conviction would not necessarily establish that the crime occurred on the date alleged in the indictment. *See United States v. McGee*, 564 F.3d 136, 142 (2d Cir. 2009) ("Where an indictment charges an offense using the 'on or about' formulation to allege the date, the government is not required to prove that the crime occurred on exactly the date

4

named, but only that it occurred on a date that is 'reasonably near' to the date stated." (quoting *United States v. Nersesian*, 824 F.2d 1294, 1323 (2d Cir. 1987)).

Nunez did, of course, eventually plead guilty. "[A] conviction—whether based on a trial or a guilty plea—is conclusive proof of the underlying facts upon which it rests and the defendant is estopped from litigating those facts in any future proceeding." *S.E.C. v. Penn*, 225 F. Supp. 2d 225, 233 (S.D.N.Y. 2016). But while Nunez pleaded guilty *in satisfaction* of the indictment, he did not simply admit every allegation in it. Rather, as is typical in federal court, he recited the specific facts constituting the crime. "When a defendant pleads guilty and allocutes to criminal conduct, it is only that specific conduct which the guilty plea incorporates." *Kaplan v. S.A.C. Capital Advisors, L.P.*, 104 F. Supp. 3d 384, 389 (S.D.N.Y. 2015)

With respect to the timing of his offense, Nunez stated, "It was around like eight months ago, around there. I don't remember exactly the time. . . . Probably the beginning of this year or the ending of last year, somewhere around there." Decl. of Joseph A. Marutollo (Mar. 14, 2018), Ex. C (Transcript of Plea Hearing). Since the plea hearing took place on October 22, 2008, the most favorable reading of Nunez's equivocal statement is that he committed the crime in February 2008, after his naturalization. He is, at this stage, entitled to that reading.

5

**B. PSR**

The government argues that the PSR "provides even more detail" about the timing of Nunez's crime. Reply Mem. of L. 4. It recites that Nunez met with a cooperating witness "on several occasions" in November 2007 to discuss selling heroin. Decl. of Joseph A. Marutollo (Mar. 14, 2018), Ex. E (PSR). It further states that one contemplated sale took place on January 10, 2008, as alleged in the indictment. *See id.* Nunez, through his counsel, did not raise any objections to the PSR.

In *S.E.C. v. Monarch Funding Corp.*, 192 F.3d 295 (2d Cir. 1999), the Second Circuit held that basing collateral estoppel on sentencing findings "should be presumed improper" and allowed "only in those circumstances where it is clearly fair and efficient to do so." *Id.* at 306. It further held that "the burden should be on the plaintiff in the civil case to prove these elements." *Id.*

Under *Monarch Funding*, a district court should first make a "threshold assessment" whether giving preclusive effect to sentencing findings is efficient. *Id.* at 310. "[I]f the court reasonably determines that the doctrine will not promote efficiency, it should feel free to deny preclusion for that reason alone." *Id.*

Giving the PSR preclusive effect promotes efficiency by removing an issue from this case, but it also provides an incentive for future criminal defendants to raise and litigate objections to matters marginal to sentencing. Since this is true in

6

every case, the Court will, in an abundance of caution, proceed to considerations of fairness. *See United States v. $119,984*, 304 F.3d 165, 174 (2d Cir. 2002) ("[T]he prospect of even a minor efficiency benefit . . . makes it difficult for us to conclude definitively that the doctrine will not promote efficiency[.]" (internal quotation marks omitted)).

An assessment of the fairness of giving sentencing findings preclusive effect should "encompass[] consideration of the four traditional prerequisites to the application of collateral estoppel." *Id.* at 173. "For the bar to apply: (1) the issues in both proceedings must be identical; (2) the issue in the prior proceeding must have been actually litigated and actually decided; (3) there must have been a full and fair opportunity for litigation in the prior proceeding; and (4) the issue previously litigated must have been necessary to support a valid and final judgment on the merits." *Monarch Funding*, 192 F.3d at 304.

The issue here is identical. However, it was not actually litigated by the parties to the criminal case or decided by the sentencing judge. It was not actually litigated or decided because it was in no way necessary to a valid judgment.

Nunez had a full *opportunity* to challenge the dates in the PSR, of course, but his incentive to do so was minimal given their complete lack of relevance to his likely sentence. His incentives were further altered by the relatively loose procedural format of a sentencing, as opposed to a civil action in general, in which

7

the Federal Rules of Evidence apply, and a denaturalization proceeding in particular, in which the government bears a heavier burden of proof. As a result, his opportunity to litigate was not sufficiently fair to support collateral estoppel. *See $119,984*, 304 F.3d at 175-176.

In sum, the traditional prerequisites of collateral estoppel lead to the conclusion that the PSR should not, as a matter of fairness, conclusively establish the date of his crime.

### III

Neither the guilty plea nor the PSR trumps Nunez's denial that he committed a crime during the relevant time period. It may well be that the government can furnish evidence sufficient to entitle it to judgment as a matter of law or, failing that, to prove its allegations at a bench trial.[1] For now, however, its motion for judgment on the pleadings is denied.

**SO ORDERED.**

/S/ Frederic Block
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
March 21, 2019

---

[1] There is no right to a jury trial in a denaturalization proceeding. *See Luria v. United States*, 231 U.S. 9, 27-28 (1913).

8